IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:21CR13-1 |
| | : | |
| JORGE ALBERTO GARCIA, | : | |
| also known as Roberto Garcia and | : | |
| Alberto Garcia | : | |

FACTUAL BASIS FOR A GUILTY PLEA

NOW COMES the United States of America, by and through Matthew

G.T. Martin, United States Attorney for the Middle District of North Carolina,

and states that the factual basis for a guilty plea is as follows:

I. BACKGROUND

At all times relevant herein, Jorge Alberto Garcia, also known as Roberto

Garcia and Alberto Garcia, was married to Helen Smith-Flores and they lived

together in Chatham County, North Carolina.

The North Carolina Licensing Board for General Contractors is an

agency created under Chapter 87 of the North Carolina General Statutes and

charged with regulation and enforcement of the practice of general contracting

within the State of North Carolina. N.C. Gen. Stat. § 87-1 requires that any

person, form, or corporation who undertakes to bid upon or to construct any

building project where the cost of the undertaking is $30,000 or more be

licensed unless it is built for the builder's own use. Section 87-13 forbids the practice of general contracting in North Carolina without proper licensure.

On June 6, 2017, the Superior Court for Wake County in North Carolina entered a Consent Order (hereinafter the "Consent Order") between the North Carolina Licensing Board for General Contractors and Garcia, who was then doing business as J&J Home Improvement, finding that a) Garcia had never been the holder of a valid license or certificate of renewal of license to practice general contracting in North Carolina; and b) Garcia committed the unlicensed practice of general contracting in Durham County in 2014. The Consent Order further enjoined Garcia from the further practice of general contracting in North Carolina. Garcia signed the Consent Order before a Notary Public on May 16, 2017, memorializing his understanding of its terms.

However, despite this Consent Order, Garcia continued to contract with individuals to construct building projects in excess of $30,000. To that end, on or about July 3, 2017, less than a month after entry of the Consent Order, Garcia filed Articles of Incorporation for the business "JH Home Improvements, Inc." with the North Carolina Secretary of State.

## II. THE SCHEME TO DEFRAUD

As a part of his scheme to defraud, Garcia would approach elderly, retired individuals at their private residences in Durham, Orange, and Chatham Counties and offer his home improvement services. These

2

individuals were largely subsisting at the time on fixed incomes. In many instances, the elderly individuals also had significant health issues. Garcia would contract with these elderly individuals to perform home improvement projects and they would, in turn, pay him via personal check or withdrawals from their investment accounts or credit cards prior to the completion of any construction work. Garcia would often direct that these elderly individuals leave the "to" line of the check blank (which would later be completed in the name of Smith-Flores), or issue the check directly to Smith-Flores who, in turn, deposited the checks into personal accounts in her name or that of her business, La Cacerola. Smith-Flores would then withdraw the money in cash and/or issue a cashier's check made out to Garcia. Garcia and Smith-Flores would also take the checks to the elderly individual's bank or their bank and cash the checks without depositing the funds into their bank accounts.

Garcia developed personal relationships with these elderly individuals, calling them "Mama" and "Papa," and encouraged them to solicit their neighbors to engage his services in home improvement projects for their residences, as well. Garcia also solicited loans from some of the elderly individuals for whom he had already contracted to perform home improvement projects, separate and apart from those projects.

However, Garcia would not complete the contracted home improvement projects, nor would he repay any loans in full. When the contracting individual,

a concerned relative of that person, or a local law enforcement officer confronted Garcia about the payments, Garcia would respond in the following ways: a) Garcia would promise to send workers to complete the project but never fully complete the project; b) Garcia would return a small percentage of the monies paid for the project; and/or c) Garcia or Smith-Flores would write a personal check to the contracting individual that would be returned by the issuing bank as lacking sufficient funds.

## III.    CRIMINAL CHARGES

Related to the above-described conduct, law enforcement in Durham and Orange Counties filed charges against Garcia in 2015, alleging Felony Obtain Property by False Pretenses, Felony Worthless Check, and Misdemeanor Fail to Work After Paid. On May 1, 2018, Garcia pled guilty in the Superior Court of Orange County to Felony Worthless Check and was sentenced to a term of imprisonment of no less than six months and no more than seventeen months, a sixty-month term of probation, and restitution of $48,880.

While on probation for his May 1, 2018 criminal conviction, though, Garcia continued his home improvement scam, as set forth in further detail below.

## IV.    SPECIFIC VICTIMS

In or around October or November 2015, Garcia approached Orange County resident P.H., an eighty-two year old man, and offered his home

4

improvement services. Garcia provided P.H. a contract for work totaling $16,880. Over the next few weeks, P.H. issued checks, often very close in time, totaling $70,520 to Garcia. When P.H.'s son confronted Garcia about overcharging P.H., Garcia wrote two checks to P.H. for $30,000 and $18,800 that were returned by the issuing institution, State Employees' Credit Union, for insufficient funds. When P.H.'s son confronted Garcia about this, Smith-Flores wrote a check on March 6, 2016 for $70,000 to P.H. but asked that he not cash it immediately. P.H. did not; a review of Smith-Flores's bank account at the time indicated she lacked sufficient funds. In sum, Garcia contracted for work totaling $16,880, estimated the work that he actually provided to be worth $520, and charged P.H. $70,520, despite the fact that he was not authorized by the State of North Carolina to perform these services in the first instance.

In or around December 2017, Garcia approached Chatham County residents J.H., an eighty-nine year old man (who died in October 2019), and D.H., an eighty-two year old woman, and offered his home improvement services. Over the course of the next few months, Garcia continued to ask D.H. for additional monies, despite the fact that he was not authorized by the State of North Carolina to perform these services in the first instance.

Between December 2017 and March 2019, J.H. and D.H. issued checks, often very close in time, totaling approximately $197,000 to Garcia that he

5

would often cash shortly after receipt rather than depositing into an account. In one instance, on or around April 13, 2018, Garcia asked J.H. for a loan of $6,400, which he agreed to repay. J.H. then wrote Garcia a $6,400 check. Later that same day, Garcia returned to the home and asked again for a $6,400 check for a loan. J.H., not recalling writing the previous check, wrote another check to Garcia in the amount of $6,400. In another instance, on or around August 10, 2018, Garcia directed D.H. to write a check to Smith-Flores for $4,680 to pay for a hot water heater. Garcia then purported to reimburse D.H. for this expense, but the check he issued to her on August 18, 2018 in the amount of $4,680 was drawn on an account with insufficient funds.

Garcia did not complete the home improvement projects at this home. When D.H. and her family members confronted Garcia, he promised to reimburse them and proceeded to pay them in cash installments ranging between $100 and $500, totaling approximately $7,400, nowhere near the amount owed. During the period of Garcia's interaction with these victims, J.H. suffered from a degenerative neurological disorder and D.H. suffered from breast cancer and pancreatitis. D.H. told Garcia that she had these conditions.

In or around September 2018, while on probation related to his conviction for Felony Worthless Check referenced above, Garcia approached Durham County resident M.M., a seventy-six year old man, and offered his home improvement services for his home. Over the course of the next few

months, Garcia continued to ask M.M. for additional monies, but did not provide invoices detailing the work to be performed, nor was he authorized by the State of North Carolina to perform these services in the first instance.

Between September 2018 and December 2018, M.M. issued checks, often very close in time, totaling $70,500 that Garcia or Smith-Flores deposited into accounts in their respective names or that of J&H Home Improvement. After receiving approximately $50,000 in payments from M.M. between September 2018 and November 2018, Garcia purported to return a check for approximately $12,000, stating that he needed only an additional $9,800. M.M. then wrote a check for $9,800 and, approximately ten days later, wrote another check for $9,800, thus maxing out his home equity line.

In addition to the monies Garcia charged M.M. for his so-called home improvement services, Garcia also extracted a "personal loan" check from M.M. Garcia did not complete the home improvement projects and returned only $3,000 in cash to M.M. in February 2019. During the time period of this interaction, M.M. suffered from a degenerative neurological disorder.

In November 2019, again while on probation related to his conviction for Felony Worthless Check, Garcia approached Durham County resident H.G., a seventy-eight year old woman, and offered his home improvement services for her home. Over the course of the next few months, Garcia continued to ask H.G. for additional monies, but did not provide invoices detailing the work to

7

be performed, nor was he authorized by the State of North Carolina to perform these services in the first instance. At the time Garcia approached H.G., both he and Smith-Flores had been served with state felony charges related to this pattern of behavior.

Between November 2019 and January 2020, H.G. issued checks, often very close in time, totaling $75,500 that Smith-Flores deposited into accounts she controlled. In one instance, Garcia suggested that H.G. take out a line of credit from her credit card issuer for $11,000 so that she could continue to write checks.

On or about February 14, 2020, state authorities arrested Garcia on a warrant arising from allegations that he was in criminal contempt of the Consent Order referenced above. That day, after a hearing regarding the same, the Superior Court of Wake County held him in criminal contempt and sentenced him, in total, to a term of imprisonment of ninety days. Smith-Flores was present at the hearing where multiple victims detailed the fraud described above. H.G. was one of the victims who testified.

On March 14, 2020, Smith-Flores went to H.G.'s home. Smith-Flores had Garcia on the telephone so that Garcia could communicate directly with H.G. This call was recorded by the inmate telephone system at the Wake County Detention Center, where Garcia was detained. On the call, Garcia called H.G. "Mama" repeatedly, and exhorted her to "have mercy" on him and his family.

Garcia asked H.G. for an opportunity to "fix it" and promised he would be "out by June." When H.G. stated that Garcia "overcharged" her, Garcia responded that he did not, and asked her not to "believe the detective" because "they" wanted to "make you against me." Garcia stated that Smith-Flores could help H.G. "make a credit card payment." Garcia asked when H.G. was going to "talk to the detective." At the end of the call, Garcia advised H.G., "Remember, I didn't do anything wrong to you."

Garcia had not completed the home improvement projects at H.G.'s home prior to his arrest. During the period of Garcia's interaction with H.G., she suffered from complications associated with a childhood bout of polio and was wheelchair-bound. As a result of Garcia's purported home improvement services, H.G.'s handicapped-accessible shower suffered a leak. The estimate for repairs to fix Garcia's work totaled over $6,000, in addition to monies owed for projects he never completed.

In or around June 2019, while on probation related to his conviction for Felony Worthless Check, Garcia approached Orange County resident C.T., a man in his late sixties, and offered his home improvement services for his home. He gave C.T. a handwritten estimate of $9,800 wherein he wrote "materials" and "labor." C.T. then wrote a check for $9,800; Garcia requested that it be issued to Alberto Garcia. The next day, Garcia had a crew at C.T.'s home for work. Smith-Flores came that same morning and told C.T. that his

9

check had bounced. C.T. had already checked with his bank beforehand, though, and knew that the check had cleared. Smith-Flores asked that C.T. write another check for the same amount and cancel the previous check. Garcia then returned and indicated that the $9,800 on the handwritten contract referred solely to materials. Garcia then received two telephone calls that were purportedly "estimates" from his crew and requested two additional checks in the amounts of $8,750 and $6,600. Garcia said his crew needed to be paid in advance. He asked that these two checks be made out to Smith-Flores because she distributed the funds to the crew.

Garcia did not perform the agreed-upon work. When C.T. realized he had been scammed, he requested that monies be returned. Garcia continued to make representations that he would pay him back, but ultimately did not. They exchanged multiple text messages related thereto. In multiple threads, Garcia asked C.T. not to go to "the police" or "Diane" (a local news reporter who had done a segment on Garcia's business practices), referring to her as "that bitch." Finally, in one thread, Garcia wrote:

> I need talk or see you.  I DON'T WAN PROBLEMS SER I WAN FIXED THIS SITUATION WITH NO LEGAL NO DIANA NO MAY LAYERS
>
> PLEASE TELL MI THE TRUTH ARE YOU WILL TAKE LEGAL ACCCION ? I NEED TO BE PREPARED I DON'T WAN BUT I THINK YOU ARE ANGRY
>
> PLEASE TELL MI WHAT YOU WAN TO DU ??

10

I may go to you wife office and look for her and deal with her. Bifore you take legal accion. Remember I have records off call and tex yesterday and today. I never refuse to pay. But you don't answer calls.

I WILL GO LOOK FOR YOU WIFE

## V. MOVEMENT OF THE MONEY

A review of Wells Fargo Bank and SunTrust Bank accounts for which either Garcia or Smith-Flores were signatories for the time period spanning May 2014 through November 2019 indicates that, as a result of the above-described scheme, they converted, for their own personal enrichment, approximately $3,178,333.65 belonging to over fifty victims.

From May 2014 through April 2018, Garcia and Smith-Flores deposited monies received from victims of the above-described scheme into accounts over which each was the respective sole signatory or the account was jointly-held. However, following Garcia's criminal conviction in May 2018, he closed accounts that he alone controlled. From May 2018 through March 2020, Garcia and Smith-Flores either cashed the victims' checks or deposited them into bank accounts where Smith-Flores was the sole signatory and Garcia had no official access. From on or about January 2017 through March 2020, Smith-Flores deposited approximately $1,225,000 in victim funds into accounts over which she was the sole signatory. Of that amount, Smith-Flores moved approximately

$874,000 of those proceeds via cash withdrawal or cashier's check issued to Garcia.

Pursuant to this scheme, on May 24, 2018, Smith-Flores deposited $21,300 in checks received from the victim R.D. into her personal Wells Fargo account ending x6437. On May 25, 2018, Smith-Flores transferred $15,000 from that account to the business account for her restaurant (the "La Cacerola" account) ending x4316. The same day, she wrote two checks totaling $14,500 to Garcia from the La Cacerola account.

On June 8, 2018, Smith-Flores deposited $18,800 in checks received from the victims B.G. and A.G. into her personal Wells Fargo account ending x6437. On June 15, 2018, Smith-Flores transferred $12,000 from that account to the La Cacerola account ending x4316. The same day, she wrote two checks totaling $11,500 to Garcia from the La Cacerola account.

On June 19 and June 20, Smith-Flores deposited a total of $25,400 in checks received from the victims B.G. and A.G. into her personal Wells Fargo account ending x6437. Between June 20 and June 22, 2018, Smith-Flores transferred $20,000 (transfers of $7,000 and $13,000) from that account to the La Cacerola account ending x4316. The same day, she wrote two checks totaling $13,000 to Garcia from the La Cacerola account.

On June 28, 2018, Smith-Flores deposited $14,000 in checks received from the victim R.D. into her personal Wells Fargo account ending x6437. On

June 29, 2018, Smith-Flores transferred $12,000 from that account to the La Cacerola account ending x4316. On June 29, 2018 and July 2, 2018, she wrote two checks totaling $11,000 to Garcia from the La Cacerola account.

On July 18 and July 19, 2018, Smith-Flores deposited $10,300 in checks received from the victim D.H. into her personal Wells Fargo account ending x6437. On July 20, 2018, Smith-Flores transferred $10,200 from that account to the La Cacerola account ending x4316. She then pooled that money with other victim monies and wrote two checks, on July 20 and July 27, 2018 totaling $19,800 to Garcia from the La Cacerola account.

On September 11, 2018, Smith-Flores deposited $18,800 in checks received from the victim N.S. into her personal Wells Fargo account ending x6437. On September 12, 2018, Smith-Flores transferred $10,000 from that account to the La Cacerola account ending x4316. She then wrote a check on September 13, 2018 for $9,000 to Garcia from the La Cacerola account.

Wells Fargo Bank routes checks and wires through Alabama and Minnesota.

VI.    FAILURE TO FILE INCOME TAXES

Garcia and Smith-Flores have filed no federal income taxes since 2007, either personally or for their respective businesses. Through review of the banking records, agents came across a signature card for one account bearing the name of R.L. Internal Revenue Service Criminal Investigations (IRS-CI)

Special Agent Miller interviewed R.L., who stated, in sum and substance, that he was not a paid preparer but had started doing his own taxes when he tired of paying H&R Block. Friends and families would then bring him their documents and request that he prepare their taxes. They would be responsible for filing them. Garcia and Smith-Flores had come to him to prepare their taxes in what he believes was 2009 or 2010. They did not come every year. He prepared Schedule C forms for both of their respective businesses. They understood that they had to file what he prepared and that he would not file them on their behalf.

R.L. recalled meeting with Garcia and Smith-Flores in 2019. They indicated they had not filed taxes in 2016, 2017, or 2018 and wanted to "get current." Leon filed for an automatic extension on their behalf (Form 4868) but had to leave the purported tax due section blank because they had brought no documents with them.

IRS-CI Special Agent Miller determined that, for the tax years 2014, 2015, 2016, 2017, and 2018, Garcia and Smith-Flores had a joint income totaling $3,242,130. Specifically, in calendar year 2017, Garcia had and received gross income of at least $20,800 and was required to make an income tax return to any proper officer of the Internal Revenue Service no later than April 17, 2018, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Garcia knew this and willfully

14

failed to file a return. Likewise, in calendar year 2018, Garcia had and received gross income of at least $24,000 and was required to make an income tax return to any proper officer of the Internal Revenue Service no later than October 15, 2019, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Garcia knew this and willfully failed to file a return.

This the 21st day of January, 2021.

MATTHEW G.T. MARTIN
United States Attorney

/S/ JOANNA G. MCFADDEN
Assistant United States Attorney
Deputy Chief, Criminal Division
NYSB No.: 4500948
United States Attorney's Office
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401
336/333-5351

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

William Trivette, Esq.

MATTHEW G.T. MARTIN
United States Attorney

/S/ JOANNA G. MCFADDEN
Assistant United States Attorney
Deputy Chief, Criminal Division
NYSB No.: 4500948
United States Attorney's Office
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401
336/333-5351